# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex. rel. | ) | |
| [UNDER SEAL], and | ) | |
| | ) | |
| STATE OF TENNESSEE, ex. rel. | ) | |
| [UNDER SEAL], and | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | CASE NO.:_____ |
| | ) | |
| [UNDER SEAL], | ) | JURY DEMAND |
| | ) | |
| **Defendant.** | ) | |

## FILED UNDER SEAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA, ex. rel.** | ) | |
| **LINDA ANDERSON, and** | ) | |
| | ) | |
| **STATE OF TENNESSEE, ex. rel.** | ) | |
| **LINDA ANDERSON, and** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:_____** |
| | ) | |
| **ALIVE HOSPICE, INC.;** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

---

### SEALED QUI TAM COMPLAINT

---

RELATOR, LINDA ANDERSON, brings this action on behalf of herself and in the name of the United States of America ("United States") and the State of Tennessee ("Tennessee"), by and through her undersigned attorneys, and alleges as follows:

### I.       INTRODUCTION

1.       Relator, Linda Anderson, ("Relator" or "Mrs. Anderson"), a resident of Davidson County, Tennessee, on behalf of herself and the United States of America ("United States") and brings this action to recover treble damages, civil penalties and costs under the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA"), and to recover damages and other monetary relief under the common law and equitable theories of unjust enrichment and payment by mistake.

2.       Relator, on behalf of herself and the State of Tennessee ("Tennessee"), brings this action to recover treble damages, civil penalties and costs under the

Tennessee Medicaid False Claims Act, Tenn. Code Ann §§ 71-5-181, *et. seq.* ("TMFCA").

3.      This action arises from false statements and claims that Defendant, Alive Hospice, Inc. (collectively "Alive Hospice" or "Defendant") knowingly presented to, or caused to be presented to, the United States and the State of Tennessee, in violation of the FCA, the TMFCA, and common law.

## II.      PARTIES

4.      Plaintiffs in this action are Linda Anderson, the United States, and the State of Tennessee.

5.      Linda Anderson, on behalf of the United States brings this action pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730 (b)(1).

6.      Linda Anderson, on behalf of Tennessee, brings this action pursuant to the qui tam provisions of the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §71-5-183(b)(1).

7.      Linda Anderson, on behalf of herself as Relator, brings this action pursuant to the retaliatory provisions of 31 U.S.C. § 3730(h) and Tenn. Code. Ann. § 71-5-183(g).

8.      Before filing this complaint, Relator served a copy of same upon the United States, together with a written disclosure statement setting forth and enclosing all material evidence and information she possesses, pursuant to the requirements of 31 U.S.C. § 3730(b)(2).

9.      Before filing this complaint, Relator served a copy of same, together with a written disclosure statement setting forth and enclosing all material evidence and information she possesses, upon the State of Tennessee, pursuant to the requirements of Tenn. Code Ann. §71-5-183(b)(2).

10.     Relator has complied with all other conditions precedent to bringing this action.

11.     Relator is the original source of, and has direct and independent knowledge of, all publicly disclosed information on which any allegation herein might be deemed based, and has voluntarily provided such information to the Governments before filing this action.

12.     Relator was employed by Alive Hospice at its' Nashville, Tennessee location as a Triage Nurse from July 6th, 2004 until February 8th, 2012.  Through her employment with Defendant, Mrs. Anderson has personal knowledge of the false records, statements, certifications, and claims that Alive Hospice presented to the United States and/or the State of Tennessee.

13.     Defendant, Alive Hospice is a Tennessee Non-Profit Public Benefit Corporation with its principal address in Nashville, Tennessee that provides both home hospice care and in-patient care primarily to Medicare, Medicaid, and TennCare recipients.

14.     Defendant Alive Hospice is a Federally Tax Exempt Corporation pursuant to Section 501(c)(3) of the Internal Revenue Code.

15.     The majority of Defendant's patients are Medicare, Medicaid and/or TennCare recipients.

16.     Defendant is vicariously liable for the actions of its directors, officers, and agents acting within the scope of their duties on behalf of Defendant.

### III.     JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §§ 3730 and 3732.

18.     This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) because Defendant transacts business and is found in this District, and acts proscribed by 31 U.S.C. § 3729 occurred in this District.

19.     This Court has false claims jurisdiction over the States' state law claims pursuant to 31 U.S.C. § 3732(b).

20.     This Court also has supplemental jurisdiction over the States' state law claims pursuant to 28 U.S.C. § 1367.

21.     Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) because: (i) Alive Hospice transacts business in this district and did so at all times relevant to this complaint; and, as averred below, (ii) Alive Hospice committed acts proscribed by 28 U.S.C. § 3729—acts giving rise to this action—within this district.

## IV.     FEDERAL STATUTORY BACKGROUND

22.     The false claims provision of the FCA, at 31 U.S.C. § 3729(a)(1)(A) (2009), provides in pertinent part that any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" shall be liable to the United States Government.

23.     The false claims provision of the FCA, at 31 U.S.C. § 3729(a)(1)(B) (2009), provides in pertinent part that any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" shall be liable to the United States Government.

24.     The FCA defines the term "claim" to mean "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (I) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or

property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. . . ." 31 U.S.C. § 3729(b)(2)(A) (2009).

25.    The FCA defines the terms "knowing" and "knowingly" to mean that a person, with respect to information: (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or (3) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b) (1986); 31 U.S.C. § 729(b)(1)(A) (2009). The FCA further provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b) (1986); 31 U.S.C. § 3729(b)(1)(B) (2009).

26.    42 U.S.C. § 426 establishes a federal insurance program for entitling individuals age sixty-five (65) and over (and others who meet certain criteria) to federal health insurance benefits.

27.    42 U.S.C. § 1395c, provides federal health insurance benefits to eligible individuals for "basic protection against the costs of hospital, related post-hospital, home health services, and hospice care. . . ."  This is often referred to as "Medicare Part A."

28.    The Medicare program is administered by the Centers for Medicare and Medicaid Services ("CMS"), a division of the United States Department of Health and Human Services ("HHS").

29.    42 U.S.C. § 1395f(a) establishes requirements for requests and certifications for reimbursements to eligible providers of health care to individuals under Medicare Part A.

30.    42 U.S.C. § 1395f(a)(2) requires as a condition for reimbursement by Medicare Part A to an eligible participating health care provider "a physician, . . . who does not have a direct or indirect employment relationship with the facility but is working in collaboration with a

physician, certifies . . . that … (C) in the case of home health services, such services are or were required because the individual is or was confined to his home . . . and needs or needed skilled nursing care . . . on an intermittent basis or physical or speech therapy . . .”

31.     As a condition for reimbursement by Medicare Part A to an eligible participating health care provider, 42 U.S.C. § 1395f(a)(3) requires,

> **“with respect to inpatient hospital services (other than inpatient psychiatric hospital services) which are furnished over a period of time, a physician certifies that such services are required to be given on an inpatient basis for such individual's medical treatment, or that inpatient diagnostic study is medically required and such services are necessary for such purpose, except that (A) such certification shall be furnished only in such cases, with such frequency, and accompanied by such supporting material, appropriate to the cases involved, as may be provided by regulations, and (B) the first such certification required in accordance with clause (A) shall be furnished no later than the 20th day of such period;”**

32.     42 U.S.C. § 1395cc(a)(1) requires health care providers eligible for Medicare Part A reimbursements to file an agreement with CMS-HHS certifying, among other things that the health care provider “not charge any individual or any other person for items or services for which such individual is not entitled to have payment made under this subchapter because payment for expenses incurred for such items or services may not be made by reason of the provisions of paragraph (1) or (9) of section 1395y(a) of this title, . . .”

33.     42 U.S.C. § 1395y(a)(1)(C) excludes Medicare coverage as secondary insurance provider "in the case of hospice care, which are not reasonable and necessary for the palliation or management of terminal illness, . . ."

34.     42 U.S.C. § 1302(a) expressly delegates to HHS, and hence to CMS, the authority to make and publish rules necessary to the efficient administration of the Medicare program.

35.     When a Medicare beneficiary elects hospice services or the hospice services change, the hospice must complete and submit Form CMS-1450 (the election notice) to Medicare (or a participating Medicare contractor).  The Form CMS-1450 includes a specific principal diagnosis code (ICD-9-CM) which provides the condition responsible for the patient's admission.  Also included is an indication of the type of facility, classification of facility, and frequency.

36.     Claims for payment are submitted to Medicare which include the description of service and a specific revenue code for that service.

37.     42 C.F.R. § 418.104 requires, as a condition of participation, "A clinical record containing past and current findings is maintained for each hospice patient. The clinical record must contain correct clinical information that is available to the patient's attending physician and hospice staff. The clinical record may be maintained electronically. . . ."

38.     42 C.F.R. § 418.200 requires, as a condition of coverage, that hospice services "be reasonable and necessary for the palliation and management of the terminal illness as well as related conditions. The individual must elect hospice care in accordance with §418.24. A plan of care must be established and periodically reviewed by the attending physician, the medical director, and the interdisciplinary group of the hospice program as set forth in §418.56. That plan of care must be established before hospice care is provided. The services provided must be

consistent with the plan of care. A certification that the individual is terminally ill must be completed as set forth in section §418.22."

39.     42 C.F.R. § 418.302(b)   provides for payment amounts in the based on the following categories:

> **(1)** *Routine home care day.* **A routine home care day is a day on which an individual who has elected to receive hospice care is at home and is not receiving continuous care as defined in paragraph (b)(2) of this section.**

> **(2)** *Continuous home care day.* **A continuous home care day is a day on which an individual who has elected to receive hospice care is not in an inpatient facility and receives hospice care consisting predominantly of nursing care on a continuous basis at home. Home health aide (also known as a hospice aide) or homemaker services or both may also be provided on a continuous basis. Continuous home care is only furnished during brief periods of crisis as described in §418.204(a) and only as necessary to maintain the terminally ill patient at home.**

> **(3)** *Inpatient respite care day.* **An inpatient respite care day is a day on which the individual who has elected hospice care receives care in an approved facility on a short-term basis for respite.**

> **(4)** *General inpatient care day.* **A general inpatient care day is a day on which an individual who has elected hospice care receives general inpatient care in an inpatient facility for pain control or acute or chronic symptom management which cannot be managed in other settings.**

40.     42 C.F.R. § 418.306 establishes substantially higher reimbursement rates for each day of general inpatient care than for respite care and routine home care.

## V.     FACTUAL ALLEGATIONS—FEDERAL FALSE CLAIMS ACT

41.     Relator was employed by Alive Hospice, Inc. ("Alive Hospice") in Nashville, Tennessee as a registered nurse from 2004 until late 2011.  Through her employment with Alive Hospice, she gained personal knowledge of the false records, statements, certifications, and claims that Alive Hospice presented to the United States and/or the State of Tennessee.

42.     Before being terminated from employment, Relator was the full-time triage nurse responsible for reviewing clinical notes and organizing ambulance transport when patients were changed from Routine Home Healthcare ("HH") to General In-Patient ("GIP") at Alive Hospice or other contracted locations.

43.     GIP reimbursement rates are significantly higher than HH rates

44.     Operating as a non-profit corporation, Alive Hospice provided free Inpatient Respite Care ("IRC") to persons unable to pay for care.

45.     GIP reimbursement rates are significantly higher than IRC rates.

46.     In order for a patient to be changed to GIP from HH, the clinical notes for the individual patient must indicate that inpatient care in an inpatient facility is necessary for pain control or acute or chronic symptom management which cannot be managed in other settings.

47.     At the beginning of 2011, Relator started to notice, from emails to me at the triage call center, that, unlike in prior years, every single Alive Hospice patient was being screened for GIP.

48.     Relator was present at an Alive Hospice nurse team meeting on or about September 2011 when her team director, Katherine Owens, began with the announcement "Don't tell anymore families about respite because we need our GIP beds."

49.     Relator was present when a nurse asked, "What if families ask about respite care?" to which Katherine Owens responded by telling those gathered for the meeting not to tell anyone about respite care unless a family *specifically* asked about it. An employee of the Defendant, a secretary named LuAnn, was taking official meeting minutes. The minutes were held in a book at the triage call center and should still be available for inspection.

50.     Relator raised the issue that transfers to GIP were not meeting criteria with her supervisor, Katherine Owens.

51.     In direct correlation, Relator subsequently received her first poor evaluation in seven years with Alive Hospice. This was the first time in her entire career with the Defendant that she was ever told that her performance was anything less than great. Relator was distraught at the evaluation and became depressed and lost sleep as a result.

52.     Relator was caused to suffer severe emotional distress based on these actions by Defendant.

53.     To remediate the poor evaluation, Relator spoke with Chris Mader, Alive Hospice's Compliance Officer (an officer with discretionary authority), about her poor evaluation and raised the issue of GIP transfers not meeting criteria. Chris Mader responded, "Well, she [Owens] wasn't supposed to put it that way."

54.     Relator told Chris Mader that GIP transfers must meet criteria to which he responded, "Well, on paper they do."

55.     January 19, 2012 was Relator's last day as call center triage nurse.

56.     On February 1, 2012, Relator spoke with Barbara Cannon, interim CEO at Alive Hospice—an officer with discretionary authority.

57.     When Relator raised the GIP issue with Barbara Cannon, her demeanor immediately changed.  She said, "I don't believe Chris [Mader] said that.  This is a serious accusation.  I am going to talk to Dave [David Tribell, Chief Medical Officer at Alive Hospice]." Barbara Cannon asked me, "What can I do to make you happy?" and "What's your dream job?"

58.     On February 8, 2012, Relator was fired by Alive Hospice for questioning the significant increase of GIP patients.

59.     Sarah Neely was a nurse who was also fired by Alive Hospice around the same time Relator was terminated.  Relator spoke with Sarah Neely and learned that she had also raised the GIP issue prior to her being fired.

60.     Some Alive Hospice patients did not meet the criteria for transfer to GIP.  Their clinical notes did not contain sufficient information meeting criteria for coverage.

61.     Relator became aware that Alive Hospice needed to budget for a substantial decrease in income for the 2011 year.

62.     Upon information and belief, this was the cause for Alive Hospice's systematic driving of patients away from IRC and HH towards GIP in order that they could increase overall reimbursement income.

63.     Upon information and belief, Alive Hospice submitted numerous CMS-1450 (the election notice) forms knowing that patients did not meet requirements for coverage; therefore, falsely implying that patients met coverage requirements when they did not.

64.     Upon information and belief, Alive Hospice submitted numerous requests for payments for GIP days knowing patients did not meet the criteria for GIP days.

65.     Upon information and belief, Alive Hospice systematically drove patients away from respite care and routine home care towards general inpatient care, not based on actual necessity but, rather, in order to increase Alive Hospice's revenue from higher reimbursements paid by Medicare and Medicaid for general inpatient days.

## VI.     STATE OF TENNESSEE'S STATUTORY AND FACTUAL ALLEGATIONS

### A. Introduction

66.     Relator, on behalf of herself and the State of Tennessee, incorporates paragraphs 1 through 65 herein.

67.     Relator, on behalf of herself and the State of Tennessee, seeks relief to redress the harm done to the public welfare and the property of the State of Tennessee that has resulted from Defendant's false claims and misrepresentations.

68.     This action arises from false or fraudulent statements, records, and claims that Defendant Alive Hospice knowingly or intentionally presented to, or caused to be presented to, the State of Tennessee in violation of the Tennessee Medicaid False Claims Act and the common law.

69.     The false claims, records, and statements at issue were knowingly or intentionally presented and/or were caused to be presented by Alice Hospice in order to participate and as a participant in the State of Tennessee's health care insurance programs.

### B.  The Tennessee Medicaid False Claims Act

70.     Under T.C.A. § 71-5-183(b)(1) "[a] person may bring a civil action for a violation of § 71-5-182 for the person and for the state. The action shall be brought in the name of the state of Tennessee. . . ."

71.     T.C.A. § 71-5-182 states:

(a) **Any                               person                               who:**

    **(1) (A) Presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing such claim is false or fraudulent;**

    **(B) Makes, uses, or causes to be made or used, a record or statement to get a false or fraudulent claim under the medicaid program paid for or approved by the state knowing such record or statement is false;**

    **(C) Conspires to defraud the state by getting a claim allowed or paid under the medicaid program knowing such claim is false or fraudulent; or**

    **(D) Makes, uses, or causes to be made or used, a record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state, relative to the medicaid program, knowing such record or statement is false; . . .**

 **(b) For purposes of this section, "knowing" and "knowingly" mean that a person, with respect to information:**
**(1) Has actual knowledge of the information;**
**(2) Acts in deliberate ignorance of the truth or falsity of the information; or**
**(3) Acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.**

    72.    Pursuant to T.C.A. § 71-5-183(g):

**Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by such employee's employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, two (2) times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate court for the relief provided in this subsection (g).**

73.     For each violation, T.C.A. § 71-5-182(a)(1) provides that the person is "liable to the state for a civil penalty of not less than five thousand dollars ($5,000) and not more than twenty-five thousand dollars ($25,000), plus three (3) times the amount of damages which the state sustains because of the act of that person."

74.     Under T.C.A. § 71-5-182(c),  " 'Claim' includes any request or demand for money, property, or services made to any employee, officer, or agent of the state, or to any contractor, grantee, or other recipient, whether under contract or not, if any portion of the money, property, or services requested or demanded was issued from, or was provided by, the state."

### C.     Tennessee Nonprofit Corporation Act

75.     Pursuant to the Tennessee Nonprofit Corporation Act, T.C.A. §§ 48-51-101, *et. seq.*, directors of Alive Hospice who breached their fiduciary duties to the nonprofit corporation and acted willfully, wantonly, or with reckless disregard may be held personally liable for damages.

76.     Officers of Alive Hospice who knowingly breached their fiduciaries duties or duty of good faith may also be held liable for damages.

## VII.     COUNTS

### COUNT I – UNITED STATES

### VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT:

### 31 U.S.C. § 3729(a)(1)(A) (2009)

77.     Relator, on behalf of herself and the United States, re-alleges and incorporates herein paragraphs 1 through 76, above.

78.     Alive Hospice knowingly submitted to the United States numerous Form CMS-1450 (the election notice) implying that it was compliant with all conditions and requirements of payment under the Medicare and/or Medicaid programs knowing that patients did not meet criteria for elections and/or that patient records, upon which payment is conditioned and required, did not exist or were not compliant.

79.     By virtue of these false or fraudulent claims, the United States suffered damages in an amount to be determined at trial.

80.     Alive Hospice is liable to the United States Government for a civil penalty for each false claim of not less than $ 5,000 and not more than $ 10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410),

plus 3 times the amount of damages which the United States sustained because of the act of Alive Hospice. Further, Alive Hospice is also liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages.

## COUNT II – UNITED STATES

### VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT:

### 31 U.S.C. § 3729(a)(1)(A) (2009)

81.     Relator, on behalf of herself and the United States, re-alleges and incorporates herein paragraphs 1 through 80, above.

82.     Alive Hospice knowingly submitted to the United States numerous claims for payment implying that it was compliant with all conditions and requirements of payment under the Medicare and/or Medicaid programs knowing that patients did not meet criteria for elections and/or that patient records, upon which payment is conditioned and required, did not exist or were not compliant.

83.     By virtue of these false or fraudulent claims, the United States suffered damages in an amount to be determined at trial.

84.     Alive Hospice is liable to the United States Government for a civil penalty for each false claim of not less than $ 5,000 and not more than $ 10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the United States sustained because of the act of Alive Hospice. Further, Alive Hospice is also liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages.

## COUNT III – UNITED STATES

### PAYMENT BY MISTAKE OF FACT

85.     This is a claim for recovery of monies paid by the United States to Defendant by mistake.

86.     Relator, on behalf of herself and the United States, re-alleges and incorporates by reference paragraphs 1 through 63 as if fully set forth herein.

87.     The United States, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid to the Defendant certain sums of money to which it was not entitled, and Defendant is thus liable to account and pay such amounts, which are to be determined at trial, to the United States.

## COUNT IV – UNITED STATES

### UNJUST ENRICHMENT

88.     This is a claim for the recovery of monies by which Defendant have been unjustly enriched.

89.     Relator, on behalf of herself and the United States, re-alleges and incorporates by reference paragraph1 through 63 as if set forth fully therein.

90.     As described above, the Defendant received, and/or continued to maintain control over, federal monies to which it was not entitled.

91.     By directly or indirectly obtaining federal funds to which it was not entitled, Defendant was unjustly enriched and is liable to account and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

### COUNT V – TENNESSEE

### VIOLATION OF THE TENNESSEE MEDICAID FALSE CLAIMS ACT:

### T.C.A. § 71-5-182(a)(1)(A)

92.     Relator, on behalf of herself and the State of Tennessee re-alleges and incorporates herein by reference paragraphs 1 through 63 of the Complaint.

93.     Defendant intentionally or knowingly presented, or caused to be presented, to the state claims for payment under the Medicaid (TennCare) program knowing such claims were false or fraudulent, in violation of the Tennessee Medicaid False Claims Act, T.C.A. § 71-5-182(a)(1)(A).

94.     As a direct and proximate cause of the Defendant's false and fraudulent claims, records, statements and unlawful conduct, the State of Tennessee has suffered, and continues to suffer, damages in an amount to be determined at trial.

95.     The State of Tennessee is entitled to a civil penalty of at least five thousand dollars ($5,000), and up to twenty-five thousand dollars ($25,000) for each false claim presented to the State of Tennessee for payment or approval or false record or statement made or used to obtain payment or approval of a false claim from the State of Tennessee; and up to three (3) times the amount of damages sustained by the State of Tennessee; and to costs of a civil action brought to recover a penalty or damages; and for all other relief the Court deems just.

### COUNT VI – TENNESSEE

### COMMON LAW FRAUD

96.     Relator, on behalf of herself and the State of Tennessee, re-alleges and incorporates herein by reference paragraphs 1 through 63 of the Complaint.

97.     As a direct and proximate result of Defendant's fraudulent conduct or intentionally false and misleading misrepresentations and omissions, the State of Tennessee has suffered and will continue to suffer harm. The State of Tennessee is entitled to recovery of all losses, damages, costs, pre- and post-judgment interest, and any other legal or equitable relief deemed proper by the Court. Defendant is thus liable to account and pay for all losses, damages and costs, interest and other relief, which amounts are to be determined at trial, to the State of Tennessee.

## COUNT VII – TENNESSEE

### UNJUST ENRICHMENT

98.     Relator, on behalf of herself and the State of Tennessee, re-alleges and incorporates herein by reference paragraphs 1 through 63 of the Complaint.

99.     For their unjust enrichment claim against the Defendant, the State of Tennessee alleges the Defendant, through the acts and omissions described herein, is in possession of state money that is rightful property of the Plaintiff State of Tennessee. This money is a measurable benefit to the Defendant to which it is not entitled and its retention by the Defendant is unjust.

100.     The State of Tennessee's payments to Defendant were not gratuitous.

101.     The benefits Defendant received from the State of Tennessee's payments are measurable.

102.     Defendant consciously accepted the benefits of these improper payments.

103.     Defendant has been unjustly enriched by retaining the use and enjoyment of monies that should not have been paid by the State of Tennessee, pursuant to the Tennessee financial aid programs, absent Defendant's false and fraudulent misrepresentations regarding its compliance with the Tennessee TennCare regulations.

104.     Defendant received, and/or has continued to maintain control over, Tennessee monies to which it is not entitled.

105.     It would be unconscionable and against fundamental principles of justice, equity and good conscience for Defendant to retain such monies paid to Defendant, particularly in view of the fraud and misrepresentation engaged in by Defendant.

106.     As a direct and proximate cause of the Defendant's wrongful conduct, the Defendant has been unjustly enriched and the State of Tennessee has suffered a detriment.

107.     The State of Tennessee is entitled to restitution and disgorgement from the Defendant of amounts they have unjustly and wrongfully received.

## COUNT VIII – RELATOR

## RETALIATION  - 31 USC § 3730(h)

108.     Relator, on behalf of herself, re-alleges and incorporates herein by reference paragraphs 1 through 63 of the Complaint.

109.     Relator was discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against by Defendant  in the terms and conditions of her employment when she called the actions of Defendant contained in this Complaint to the attention of officers of Defendant who had discretionary authority in violation of 31 USC § 3730(h).

110.     Relator is entitled to all relief necessary to make the employee whole including reinstatement with the same seniority status such employee would have had but for the discrimination, two (2) times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. *See* 31 USC § 3730( h)(2).

## COUNT VIII – RELATOR

## RETALIATION - T.C.A. § 71-5-183(g)

111.     Relator, on behalf of herself, re-alleges and incorporates herein by reference paragraphs 1 through 110 of the Complaint.

112.     Relator was discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against by Defendant  in the terms and conditions of her employment when she called the actions of Defendant contained in this Complaint to the attention of officers of Defendant who had discretionary authority in violation of 31 USC § 3730(h).

113.     Relator is entitled to  "all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, two (2) times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees." T.C.A. § 71-5-183(g).

### VIII.   PRAYERS FOR RELIEF

**A.     UNITED STATES' PRAYER FOR RELIEF**

WHEREFORE, Relator, on behalf of herself and the United States, demands and prays that judgment be entered in its favor against Defendant, as follows:

114.     On Counts I and II, under the Federal False Claims Act, as amended, for triple the amount of the United States' damages plus interest and such civil penalties as are allowable by law, together with the costs of this action and such other and further relief as may be just and proper.

115.    On Count III for payment by mistake of fact, for the damages sustained, plus prejudgment and post-judgment interest, costs, and all such further relief as may be just and proper.

116.    On Count IV, for unjust enrichment, for the amount of unjust enrichment, plus pre-judgment and post-judgment interest, costs, and all such further relief as may be just and proper.

117.    That judgment be entered in favor of the United States and against the Defendant for actual damages, pre-judgment and post-judgment interest, litigation costs, investigative costs, disgorgement of all profits, and an accounting, to the fullest extent as allowed by law, and for such further relief as may be just and proper.

### B.    TENNESSEE'S PRAYER FOR RELIEF

WHEREFORE, Relator, on behalf of herself and State of Tennessee, respectfully requests this Court to enter judgment for the State of Tennessee and against Alive Hospice as follows:

118.    On Count V, under the Tennessee False Claims Act, an amount of three times the amount of damages sustained by the State of Tennessee plus interest, a civil penalty of at least $5,000 for each false claim, all costs of this civil action, including reasonable attorneys' fees and expenses, and such other and further relief as may be just and proper.

119.    On Count VI, for common law fraud, for the damages sustained, punitive damages, plus pre-judgment and post-judgment interest, costs, and all such further relief as may be just and proper.

120.     On Count VII, for unjust enrichment, for restitution and disgorgement for the amount of unjust enrichment, plus pre-judgment and post-judgment interest, costs, and all such further relief as may be just and proper.

121.     An order freezing the assets of Defendant, until such time as the Court has resolved the claims against the Defendant.

122.     That judgment be entered in favor of the State of Tennessee and against the Defendant for actual damages, pre-judgment and post-judgment interest, litigation costs including attorneys' fees, investigative and enforcement costs, disgorgement of all profits, and an accounting, to the fullest extent as allowed by law, and for such further relief as may be just and proper.

C.     **RELATOR'S PRAYERS FOR RELIEF**

WHEREFORE, Relator, on behalf of herself, respectfully requests this Court to enter judgment her and against Alive Hospice as follows:

123.     On Counts I and II, under the Federal False Claims Act, as amended, in addition to at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, all relief necessary to make Relator whole including reinstatement with the same seniority status such Relator would have had but for the discrimination, two (2) times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

124.     On Counts V, under the Tennessee Medicaid False Claims Act, as amended, in addition to at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, all relief necessary to make Relator whole including reinstatement with the same seniority status such Relator would have had but for the discrimination, two (2) times

the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

125.     On Count VIII, that the Court find for Relator against Defendant for all available damages and relief under 31 U.S.C. § 3730(h), including, without limitation, two times back pay plus interest (and prejudgment interest), reinstatement or in lieu thereof front pay, and compensation for any special damages and/or exemplary or punitive damages, and litigation costs, and attorneys' fees;

126.     On Count VIII, that the Court find for Relator against Defendant for all available damages and relief for Defendant's violation of the Tennessee Public Protection Act and Common Law Retaliatory Discharge by Defendant, including, without limitation, two times back pay plus interest (and prejudgment interest), reinstatement or in lieu thereof front pay, and compensation for any special damages and/or exemplary or punitive damages, and litigation costs, and attorneys' fees;

Respectfully submitted,

/s/ John W. Roberts
W. Joseph Werner (TN BPR 26975)
John W. Roberts (TN BPR 024679)
*Attorneys for Relator Linda Anderson*
1720 West End Avenue, Suite 402
Nashville, Tennessee 37203
(615) 242-1001
(615) 953-2169
jroberts@robertswicker.com
jwerner@midtnlawyer.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on _____, a copy of the foregoing was served on the following via United States Mail postage prepaid:

United States Department of Justice
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

United States Attorney's Office
Middle District of Tennessee
110 9th Avenue South, Suite A-961
Nashville, TN 37203

Office of the Attorney General and Reporter
State of Tennessee - Enforcement Division
P.O. Box 20207
Nashville, TN 37202-0207

/s/ John W. Roberts